May it please the court, my name is Mark Minster and I represent Pedro Cuellar-Garcia. There's three cases that are connected here. We'd like to divide up our time as follows. I'm going to take up approximately four minutes. Counsel for Salmoran-Sanchez, five minutes. Counsel for Torres, six minutes. And then saving five minutes for rebuttal. All right, counsel, that sounds like more than my pad can take. So you'll have to keep your time among yourselves. We recently had an in-bank case in which counsel divided their time very carefully. And the first attorney was subject to intense questioning, so intense that the second attorney had about two minutes and the third attorney didn't get a word out. So as to those of you who are dividing your time, get ready to give your colleague a high sign. And I won't accept, I won't object to you standing up and walking over there and, no, don't bump him. No violence. But tugging his elbow. That's all right. All right, pardon me, sir. Let me get your name first because there's several of you. Are you Mr. Trejo? No, I'm Mark Minster. I'm representing Mr. Cuellar-Garcia, yes. All right. And you've got Cuellar-Garcia. Yes, Your Honor. All right. Shoot. I mean it. Thank you. Commence. There's two issues before the court in my case. And the first is whether the sentencing decision is appealable at all. And then secondly, whether the sentence was reasonable in light of the factors in 18 U.S.C. 3553. The government is arguing that the decision is not appealable because this was a plea under Criminal Rule 11. And it was a bargain for a range between 60 months and 180 months. And the judge split the baby right down the middle at 120 months. The plea agreement did not call for a waiver of the right to appeal. And the prosecutor was asked this during the sentencing hearing and said there wasn't. And the plea agreement did say that the court was going to have to consider the guidelines and the factors set out in 3553A. The cases cited in the prosecutor's brief, Pacheco, Navarrete, and Soslowski and Silva, which are all Civil Rule 11 cases, are all cases where the sentence was a specific sentence agreed on rather than a range. So they were different from this case, and I think on that ground it's distinguishable. But after the brief was filed in this case, a panel of this court handed down a decision in United States v. Garcia at 507 Federal 3rd, 1213, in November of 2007. And Garcia holds that a Rule 11 plea cannot be appealed under the reasonablest rule of Booker and Plouffe, even though it wasn't for a specific sentence but was for a specific range. There's been a petition for rehearing, as you know. And Garcia, do you know how that stands, whether it's been denied or not? I don't, Your Honor. I mean, I know that the case came out. I know it came out after I filed my brief, but I don't know where it sits at the moment. Well, we've met, of course, Garcia. We've been here with it. No doubt. But I must confess that I don't know what the status is of that petition for rehearing or for in bank. Yeah. So I think Garcia extends the rule of Pacheco-Navarrette to the cases where there's a range rather than a specific sentence. So if it was correctly decided and if it's binding on you, then you don't have any jurisdiction in my case to review under Plouffe or Booker. So what should we do? Wait until we find out what's going to happen in Garcia? I think so. And so for that, I'm going to spend the last minute and a half or so on the reasonableness issue. Mr. Cuellar Garcia was 66 years old at the time of his sentencing in this case, which was about a year and a half, two years ago now. The 10-year sentence given by the court will let him out at about age 76, and then this can be followed by five years of federal supervision. So he would be free of the government's review at about age 81. His trial lawyer told the Supreme Court that he had diabetes and his vision was failing, which is something that's often associated with that. While the court did give and mention that he was giving consideration to health and age issues in this, I used the word lip service in my brief. Maybe that was a little harsh, but a person who is that old who's given a 10-year sentence is essentially given, I think, a life sentence. But in this case, though, we're looking at an abuse of discretion situation, and assuming for a moment that Garcia doesn't impact our decision here, we're reviewing this for reasonableness. The district court went through the 3553A considerations, including his age and health. It started with the fact that the guideline range was 135 to 168 months, that this was his fourth major felony. He stated that he would normally sentence Ecuador Garcia to 14 years, but in light of his age and health, he sentenced him to 10 years. So given the fact it was within the range of the plea agreement and these other considerations, why is that an abuse of discretion? I think that the only way that you can get to that, Your Honor, is to say qualitatively, does a sentence of 10 years have to be given in this case to incapacitate and protect the public from a person who's 66 years old at the time of the sentencing, who would be 71 if he got the sentence that was recommended by the defense, with five years of federal supervision to follow that after into his late 70s, who's already ill and with failing vision. Your time is up. Thank you. All right. May it please the Court, my name is George Paul Trejo, Jr., and I'm here this morning on behalf of Angel Salmaran Sanchez. I'm here this morning asking this Court to review the sentences posed for reasonableness under 18 U.S.C. 3742A. As this Court's well aware, district court judges must still calculate guideline sentencing range and must provide a detailed justification for deviating from the guideline range. In the few years since Booker, courts throughout the country have imposed over 50,000 within guideline range sentences, but circuit courts have only declared a precious few sentences as unreasonable on appeal. The detailed list of considerations in 3553A, the guidelines are just one factor among many, and yet- Mr. Trejo, have there been any Ninth Circuit Court opinions at all that have found that after Booker that the sentence was not reasonable? No, not that I could find, Your Honor. Not that I could find. That tells us one of two things, either that we're not paying very close attention to the law or our judges on trial court are very reasonable. Well, Your Honor, I would respectfully submit to the Court that perhaps a different standard or different manner of analyzing the lower sentence should be imposed rather than dealing in terms of whether or not the underlying guideline sentence is presumptively reasonable. Why not look at it as a presumption of susceptibility, that it's suspect? And that would, in fact, cause the lower courts to be more- provide more specificity in analyzing the sentences they're imposing. You argue that the sentence was not proportional to what other- of the defendants received. Your men got 103 months, Coya got 120, and Torres got 108. But I didn't see in your brief that you identified Salomarán Sánchez as a person who is similar to another person who got similar or unsimilar sentencing. Well, what was argued to the district court was that Salomarán Sánchez was, in fact, a middleman and merely provided controlled substances for others. And in terms of the proportionality argument, when we look at the leader of this conspiracy, Daniel Silva Sánchez and what his brother received, I believe it was a sentence of 87 months, and look at the proportionality there in terms of what his involvement was relative to my client, that's where our argument is founded. Did Sánchez take the lead in turning over? I'm not sure on that one, Your Honor. I don't believe that the brother did. The main one may have, Daniel, but I'm not sure that his brother, who received the 87 months, and Daniel may still be pending sentencing, awaiting his 5K1 motion at this time. The district court seemed to go out of its way to discuss your client's situation, the 3553A factors, the parsimony clause and everything, and concluded that with all of that in mind, he felt that the sentence that he gave was appropriate, and it was certainly within the range agreed to by your client, right? It's certainly within the range. In terms of whether or not he went out of his way, I would have to respectfully disagree with that. I don't believe that there were more than boilerplate statements made concerning the application of 3553 in this particular case. But in our case, as appellate judges, we have to look at what the district court did, what the district court said, and then determine whether there's been an abuse of discretion. You think that what the district court did in the case of your client amounted to an abuse of discretion? And if so, why? An abuse of discretion in terms of not adequately providing specificity of the 3553A factors in determining why a variance should not have been imposed. Do you have any case from our circuit that indicates that a sentencing judge has to go through and specifically enumerate all of the 3553A factors, or do they simply have to indicate that they have been considered? So far, they just have to be considered. But what I'm arguing to the court is, suggesting to the court, is that rather than adopting the presumption of reasonableness for the within-guideline range, Well, we haven't. We haven't, but it seems that the disproportionate number of sentences that are being upheld on appeal are either being upheld because they're within the guideline range or because the lower courts have considered the 3553A factors but still fell within the guideline range. Judge, tell me what 3553A factor or factors the judge may have nodded to or winked at but not really applied to the facts of your client. My client's, and it may not have been the judge's fault in this particular case, but the pre-sentence report does in fact include some, but not all, of my client's background. I think it's important to know the personal characteristics of the accused, especially when they come from extreme poverty in Mexico. All right. Thank you, Your Honors. Good morning, Your Honor. I'm Lynelle Nussbaum, and I represent Alejandro Macinas-Torres. The issue I'd like to address is the breach of the plea agreement in Mr. Torres' case. And initially I'd like to concede that the corrected transcript that was provided is in fact accurate, that the prosecutor did not specifically request 130 months. This was originally reported by the court reporter in the transcript. Nonetheless, the government violated the plea agreement in this case. In the plea agreement, the party stipulated that the amount of cocaine involved in the offense was more than 5 kilograms but less than 15 kilograms. This provision prohibited the government from arguing for sentencing purposes that more drugs were involved. This court considers this contractual meaning of this paragraph 8. Pardon me, ma'am. Yes, sir. Isn't it incumbent on the government to talk, to bring to the attention of the sentencing judge, I think the phrase is, other relevant conduct that is not involved in the crime? Your Honor, it is incumbent on the court to be aware of that. The government brought that to the attention of the probation office, and we have not claimed a breach in bringing that information to the attention of the probation office. The information was included in the pre-sentence report. The probation office nonetheless acknowledged that the amount agreed upon, the 5 to 15 kilograms, was a reasonable amount given the overall circumstances. And so there was no dispute with the probation office's recommendation. There was no reason for the government to make further, bring further attention to these facts to the court for purposes of sentencing. And, in fact, it was a direct violation of the plea agreement for it to do so. Was there anything in the plea agreement which said in specific terms the government shall not introduce any evidence beyond 5 to 15 kilograms nor make any allusion to any conduct or argue that this was only the tip of the iceberg? Not that broadly, Your Honor, but the language of that paragraph 8 is the contract. The bargain that the defendant obtained was that the parties agreed to was that the defendant would admit that there was more than 5 kilograms of drugs involved, and the government admitted that there was less than 15 kilograms. The context of that, then, is under the heading of sentencing factors for purposes of the guidelines. The government may be free to argue other facts relevant to the conduct, but not argue other amounts of drugs. Are you suggesting that since this is, in fact, a contract, that there is, if you will, an implied covenant of good faith and fair dealing on the part of the government and or the defendant? At the very least, Your Honor, that that is, in fact, constitutionally guaranteed. And, in fact, if there is any dispute or any ambiguity, it's to be construed against the government because the government is the repeat player in plea agreements, and the defendant is there automatically. What about the issue? Is there any case law that indicates that, assuming arguendo, that the contract was breached, that there could be harmless error? No, Your Honor. There is no analysis available of harmless error for a breach of a plea agreement. The proper remedy is to remand for resentencing before a different judge. The DeWitt case by the Eighth Circuit, which the government cited in its brief, specifically drew the distinction between what the government may argue and what the government may not argue when there is a stipulation. That case also involved a stipulation to the amount of drugs involved, and the Eighth Circuit held that the government may argue issues that were not subject to stipulation in the plea agreement, but it could not argue contrary to its own stipulation. If the Court has no further questions, I reserve the balance of my time for rebuttal. Thank you. Thank you. May it please the Court. My name is Todd Greenberg. I'm an assistant United States attorney here in Seattle. I was also counsel in the district court on all three of these matters. Your Honor, I wanted to address your question with respect to good faith because the government here and me personally, I agree with counsel. There is an implied promise of good faith, especially on behalf of the government in these cases. Is there any case law in that, counsel? I don't know, Your Honor, but I would say as the Department of Justice and a representative of the Department of Justice, we believe that it's incumbent on us to act in good faith, and I believe that personally, and I think that I did that in this case. Why did you say that this was just the tip of the iceberg, this guy's really involved in a lot of other drug dealing you're arguing all about? You're recommending 120 months. The defendant recommended 60 months or requested, I think. Yes, Your Honor. 60 months. And the district court imposed 108, was that it? That's correct, Your Honor. You know, you didn't have to do all that, it seems to me. You pretty well covered that. Why are you arguing about all this other drug involvement? What's the purpose of that? Well, Your Honor, the purpose was to argue in support of the sentence that I advanced in the district court. 120 months. That's right, Your Honor. So there are two different ranges that we were dealing with in the district court. One was the guideline range, and in this case, the guidelines called for a sentence of between 108 months and 135 months. Now, I was not able to argue for a sentence of 135 months, so within the guideline range, we're effectively dealing with a range of 108 to 121 under the plea agreement. But your comment was purely intended to influence the court's sentencing in this case. It was intended to influence the sentencing within the bounds of the plea agreement. The second range that we were dealing with in the district court is what I refer to as the effective range of the sentencing here, which was, as the court indicated, between 60 and 120 months by the time we got to the sentencing hearing. And there is nothing in this plea agreement that prohibited the government from arguing, from citing any evidence in support of our recommendation of 120 months. I was justified in talking about drug quantity both within the 5 to 15 and beyond. I was justified in commenting on the role that the defendant played. I was justified in citing all sorts of evidence that we had, as long as we did that only to support a sentence under the plea agreement of below 121 months. And that's exactly what we did. Yes. Mr. Gamper, suppose the district judge had said, well, now, you're telling me that there was a lot of drugs that this fellow was involved with. Why did you then limit in the plea agreement the amount of drugs to 15 kilograms, I guess it was? My answer would be the same answer I would give in many, many of our cases, to accommodate the defendant in coming to a reasonable resolution of the case. What? To get a settlement? Essentially, to reach a fair resolution of the case that both sides could live with. The same question could be asked. Why did I agree to allow the defendant to plea to a five-year mandatory minimum term as opposed to the 10-year term, which the evidence would have supported? It's the same answer, Your Honor. We do this in many of our cases. And I stood by the plea agreement. I still do today, and I would have before the district court. But that didn't, you know, we didn't agree to tie our hands behind our backs and not cite the evidence to support the sentence that we bargained for in the plea agreement. Now, clearly, if I asked the court to find a higher offense level under the guidelines, that would have breached the plea agreement. I specifically did not do that. I asked the court not to do that, and I clarified that I was not doing so. That's what happened in DeWitt. That's exactly what happened in DeWitt, Your Honor. And in DeWitt, the problem, the government, no, that's not what happened in DeWitt. That's what happened in Franco Lopez. Yes, Your Honor. And that's where the government was found not to have breached the plea agreement for doing that. The problem in DeWitt, the government breached the plea agreement in DeWitt. The problem there, and the court found, this court found, and this is a quote, on its own initiative, the government sought to present evidence that the drug quantity and the corresponding base offense level should be higher. So that's much different than what I did. I concede if I said, Your Honor, this was 30 kilos of cocaine. This should be an offense level 36. That would have violated the plea agreement very clearly. I wouldn't be here. I would have conceded that, as the government did in the Camper case. But that's not what happened here. I was very clear on the record. I even said we want to avoid any issue with respect to this on appeal, that we are not asking this court to find a higher offense level. I also would have breached the plea agreement had I asked the court to sentence the defendant to more than 121 months. I did not do that. In fact, we dropped our recommendation one month to be consistent with the probation office in this case. Those are the two things, with respect to drug quantity, the two promises the government made, to recommend a base offense level of 32 and to recommend a sentence of 121 months. We did both of those things. How do you reconcile the U.S. v. Johnson case? That seems pretty close to this one, isn't it? Your Honor, I'm not as familiar with the facts of U.S. v. Johnson. This is 187, Fed 3rd, 1129. It's a 1999 case from our circuit. In that case, the prosecutor abided by the plea agreement, recommended the low end of a sentencing range, but introduced additional evidence, which could have only been reviewed in, I'm quoting, the court as an attempt by the prosecutor to influence the court to give a higher sentence than the prosecutor's recommendation. In that case, the court vacated and remanded for sentencing. What's the difference in that case and this case? The case you're citing sounds very similar to the United States v. Mondragon case, where this sounds like a very similar set of circumstances. I did not cite the evidence to argue for a sentence harsher than I was entitled to do under the plea agreement. I was very clear with the district court. We recommended a sentence of 120 months. All of the evidence that I cited to was designed to support our recommendation. I couldn't have been clearer with respect to that in the court. The problem with these other cases, the one you're citing and Mondragon and DeWitt, as the court mentioned, is that the government was found by the court to have intended to argue for a sentence in breach of the plea agreement. Well, as you know, your opposing counsel are arguing that, in fact, the government did breach the plea agreement by bringing something up that was, if you will, a hot issue. You could have affected the court's reasoning. You candidly admitted that you intended to influence the judge in his sentencing. You say you didn't want to influence him to exceed, in any way that would breach the plea agreement. But you can understand why, from the perspective of the defense, this might be considered, since you were trying to influence the court, this could be considered a breach of the agreement. Well, I understand the appeal. I wouldn't submit that this is completely frivolous. I would note, though, and it's interesting to look back on the record and see that there was never an objection by trial counsel to this. It was not perceived in the district court or by the court. Of course, Judge Lasnik would have noted a potential breach issue like this. Are you suggesting that this is waived? No, Your Honor. Well, there is this issue of the pro se pleadings, and I wasn't really relying on that in my brief with respect to the standard of review. I'm not arguing that it was waived. The defendant submitted a pro se letter or motion raising this just prior to sentencing. So, no, I wouldn't advance the waiver argument. But I think it speaks loudly that the court, as well as the defense attorney in this case, who, of course, read the sentencing memorandums, was present at the sentencing hearing, never even alluded to a breach or an unfairness in the government's argument. It wasn't intended that way. I don't think it's reflected that way in the record. But I will say, and counsel does an effective job arguing this issue, as she normally does, but just because there is a cognizable or arguable issue doesn't make it a winning one. And you agree that there is no harmless error analysis that applies in this case? It appears that way from the court's prior decisions, that there have been a couple that address that point very cursorily and say that. Are you talking about Mondragon? Yes, Your Honor. And I'm not arguing harmless error in this case. I'm arguing that we just simply did not breach the plea agreement. And I will say this in response to the court's last question as well. I was aware in the district court, obviously, that this issue lurked. And I tried to be very careful, and the record will reflect that. I even noted for the district court, look, I'm not asking the court to consider any additional evidence to raise the guidelines. We don't want to have that issue on appeal. So this wasn't bad faith or willy-nilly carelessness on behalf of the government. This was done within the bounds of the plea agreement with those bounds in mind. And I tried to be very clear to the district court for the record what we were asking for and what we were not asking for. I think the record does reflect that. Unless the court has other questions, I will submit on the briefs. In the United States v. Allen, 434 F. 3rd, 1166, 9th Circuit, 2006, this court approved a holding from another circuit that an attempt by the government to influence the district court to impose a harsher sentence than agreed to violates the agreement. But wait a minute. There was no harsher sentence than was imposed in the agreement because the agreement was 121 months and the sentence imposed was 108. But this court further approved language in that opinion that said when the government volunteers evidence that the plea agreement is inaccurate or incomplete, that is, the amount of drugs specified is inaccurate. There was no such indication by Mr. Greenberg. He simply said there was other drugs used or moved by this man, but he didn't say that the stipulation was inaccurate or incomplete. Your Honor, when he says there were far more drugs involved than the 15 kilograms, I would suggest that indeed that suggests that the stipulation is inaccurate. One thing is the stipulated amount, which is arrived at by negotiation by weighing the objective correlation of forces, and the other thing is what counsel can hope to prove had it gone to trial. And what this court approved in United States v. Allen was that the government breaches the plea agreement even if it simultaneously states that it will stick to its stipulation in the plea agreement if it volunteers evidence in conflict with that plea agreement. But it didn't volunteer evidence in conflict with the plea agreement. One thing is the stipulated amount. That is a fictitious matter that's negotiated by the parties. A fictitious matter, Your Honor. In fact, the defendants are placed under oath, Your Honor, before entering a plea. Right. They are bound under threat of perjury that everything in that plea agreement is accurate. Right. For this court to say that it's a fictitious matter when they've reached an agreement and that the government may then... It's a negotiated amount that the parties arrive at. It's like damages in a lawsuit. And under due process, Your Honor, it's not like damages in a lawsuit because my client is in prison. He was not forced to pay damages. It is not negotiated in that sense. But under due process, my client is entitled to the benefit of his bargain. He understood this bargain to be that the government would agree and did agree that the amount of drugs involved for purposes of sentencing was 5 to 15 kilos. That's right. Not really for determining a standard range, but for purposes of sentencing. And nonetheless, the government volunteered to the court. Other relevant conduct showing that there was more drugs involved, but did not vary from the recommended sentence. If they said, this is the tip of the iceberg and we want you to go above 120 months, that would be a different kettle of fish. Nonetheless, if what you have is a range for the court, my client's bargain was that the government would not go above the 15 kilograms. He agreed not to go below the 5 kilograms. Your bargain was that there would be a stipulated amount for the court to consider in imposing 60 to 121 months. That was the bargain. And the government argued beyond that amount, Your Honor. For the court to make that ascertainment as to whether between 60 to 120. You wanted to have the judge go to the upper limits of the amount, rather than have you argue the bottom limits of the amount. You were perfectly free to argue that the evidence regarding tip of the iceberg and the other amounts was not good evidence, and you could have argued a smaller amount, and you could have said we agreed to 5 to 15 because the man didn't have the resources to go to trial and didn't have witnesses and wanted to get it over with, but there really wasn't, Judge, even 5 kilograms. We just took the fall on this for personal reasons and family reasons. You could have argued all of that. Your Honor, that's not what was argued. Had that been argued, perhaps the government would have been justified in responding. Nonetheless, that was not argued by the defense. I think the government's position is you can argue anything which the guidelines allow for argument so long as you don't violate the terms of the agreement, which is 60 to 121 months. And I submit that that's an inaccurate reading of this contractual provision. I wonder if I could just ask one quick question on what I show as being page 10 of 13 of the colloquy. Starting at line 6, the court says, Mr. Greenberg, in probation, argued for something other than the bottom of the range, pointing out some of these same factors which dealt with prior criminal history. It is the court's feeling that that is taken into consideration by the criminal category score, so I'm not going to punish him two times for that. That seems like the court is saying that it took into account what Mr. Greenberg did say and the amount of drugs in other situations and discounted it, did not want to count it twice. Is that an incorrect reading of that colloquy? I'm sorry, Your Honor. Page 10 of 13, at least according to what I have here. I don't know where it is in the excerpts of the record. I'm sorry. Let me see if I can help with that. In any event, if I'm understanding the court's question correctly, as to the district court's response to the comments from the government, the district court, whether the district court did or did not take this into account, has no bearing on whether or not there was a breach. If there was a breach, then my client is entitled to a new sentencing hearing in front of a different judge. So you don't go along with the no harm, no foul? No, Your Honor. Okay. Thank you very much. Thank you, Your Honor. This matter will stand submitted and the court will stand in recess for 10 minutes.
judges: Schroeder, Leavy, Ikuta